UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HOTSON NEREE,                                          :

                         Petitioner,                   :

          v.                                           :          **DECISION & ORDER**
                                                                  17-CV-5434 (WFK)
MICHAEL CAPRA, SUPERINTENDENT                          :
SING SING CORRECTIONAL FACILITY,                       :

                         Respondent.                   :
------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**  Hotson Neree ("Petitioner"),
proceeding *pro se*, brings this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254
(the "Petition"), challenging his conviction for Robbery in the Third Degree and Grand Larceny
in the Second Degree.  Petitioner raises four grounds for relief: (1) denial of his Constitutional
right to represent himself at trial; (2) trial court failed to exercise its discretion in denying his
request for hybrid representation; (3) use of unconstitutional lineups and identifications; and (4)
illegal search and seizure of cell phones.  For the reasons discussed below, the Petition is
DENIED.

## BACKGROUND

### I.    Factual Background

On June 14, 2011, Petitioner robbed a Macy's jewelry department at the Smith Haven

Mall.  Respondent's Mem. of Law in Opp'n to Pet. at 18, ECF No. 9-1 ("Opp'n Mem.").

Petitioner told the clerk working there he had a gun in a paper bag.  *Id.* at 4–5.  The clerk, made a

point of observing him carefully while he made her give him diamond rings out of the case.  *Id.*

at 5.  The Macy's also took surveillance footage of Petitioner during the robbery.  *Id.* 5–6.

Petitioner stole diamond rings worth a total retail value of $222,566.00 from the Macy's.  *Id.* at

8.

While reviewing surveillance footage of the robbery, one of the detectives recognized

Petitioner from an earlier incident.  *Id.* at 7.  Four days later, a resident of the area found a

baseball cap that matched the one worn during the robbery, which was subjected to DNA testing

and matched Petitioner with an accuracy of 6,200 to 1. *Id.* at 8, 10.

On June 22, 2011, Petitioner was arrested and found to have two cell phones in his

possession, one of which contained cookies from social.macys.com from almost exactly 24 hours

before the robbery. *Id.* at 9, 11. The phone's call logs included 27 calls which were received by

the cell tower on the roof of the Smith Haven Mall or in Centereach, New York. *Id.* at 12. At

trial, a witness testifying on how cell towers operate stated a tower will pick up calls from within

a mile to a mile and a half from the tower. *Id.*

On June 23, 2011, the Macy's store clerk identified Petitioner in a police line-up as the

man who robbed the store. *Id.* at 9. Another eyewitness also identified Petitioner as the

perpetrator of a second Macy's robbery, which occurred on June 11, 2011. *Id.*

## II.   Conviction and Sentencing

The County of Suffolk then moved forward with a case against Petitioner, beginning with

a number of pre-trial hearings before the Honorable Judge James Hudson of the County Court

for Suffolk County. Prior to the first hearing on June 6, 2012, Petitioner sent a letter to the trial

court indicating he was not satisfied with his counsel's representation but may wish to continue

working with him. State Court Record at 10-2:134–35 ("R.").[1] Petitioner told the trial court

"I'm still torn between that and the alternative, either a new attorney today, or that I may be able

to be a co-counselor in my representation . . . . But I do not want to waive my rights to an

attorney. . . . However, I'm counsel, he's co-counsel." R. at 10-2:138–39. The trial court

discussed the risks and issues associated with such an arrangement between Petitioner and his

---

[1] As the State Court Record is comprised of multiple documents without consistent pagination, in this Opinion & Order page citations to the State Court Record refer to the ECF docket entry followed by the PDF page number of the document to which the citation refers.

trial counsel on the record. R. 10-2:140–46. At one point the trial court asked Petitioner: "So are you specifically asking for leave to represent yourself with Mr. Mates remaining as your legal advisor?" Petitioner answered, "Counsel, I'm asking for his counsel, Your Honor." R. at 10-2:149. The trial court noted "you have made the request to represent yourself with—as co-counsel with Mr. Mates, a hybrid form of representation," which was, "beyond the normal purview of the hybrid representation which has been allowed by some court, because it is more than hybrid, it actually elevates a defendant to the same position as co-counsel." R. at 10-2:170.

After going through Petitioner's background with him and explaining the rights being waived, the trial court found the "Court is satisfied that if [Petitioner] wishes, he's made a competent, intelligent and voluntary waiver of his right to counsel in the case" but "I'm not going to have a hybrid representation of Mr. Mates asking questions and then you asking questions. You can proceed with Mr. Mates as your attorney . . . or you could represent yourself, if you wish." R. at 10-2:159. Specifically, the trial court found "I am aware of case law that states, that although a trial court may appoint standby counsel to assist a *pro se* defendant, a defendant has no right to a hybrid form of representation in either the Federal or the State Court System." R. at 10-2:162–63. The trial court told Petitioner "[s]o the options are, once again: You could represent yourself, with [trial counsel] then being of counsel to you. You could have Mr. Mates represent you. Or the last option is, I could relieve Mr. Mates and appoint another attorney to represent you." R. at 10-2:177. In response, Petitioner concluded "I would like to represent myself with counsel as my advisor." R. at 10-2:178.

However, at the June 14, 2012 hearing, the trial court reappointed counsel for Petitioner. Petitioner expressed concerns with the arrangement of having Mr. Mates assist him. R. at 10-3:7 ("It's not working, Your Honor, it's really not. I've tried, Your Honor. I've tried everything.").

3

Petitioner went on to say, "I can't make an informed decision, Your Honor, because I'm not receiving any kind of expert opinion." R. at 10-3:9. After a lengthy discussion, the trial court found Petitioner did not understand the nature of the proceeding. R. at 10-3:14. The trial court "can only conclude, this is based upon reflection of the proceedings in which he was allowed that right to proceed [*pro se*], that second thoughts have arisen . . . I no longer feel that based upon statements you placed on the record today that you are able to, first, make the competent decision to proceed in the absence of counsel." R. at 10-3:14–15. Ultimately, after a lengthy discussion, Petitioner concluded he would proceed with Mr. Mates as his attorney. R. at 10-3:31. Prior to trial, however, Petitioner requested new counsel and Mr. Stafford was appointed as his counsel.

During the testimony of one of the People's witnesses at trial, Petitioner interrupted the proceedings and stated he wanted to ask questions of the witnesses himself as he and Mr. Stafford were "not seeing eye to eye on certain issues." R. at 10-8:4. The trial court inquired and Petitioner stated "I'm not waiving my right to counsel. I'd like to question witnesses myself. That's what I'd like to do." *Id*. The trial court concluded it had the discretion to allow such hybrid representation, but declined to allow it because Petitioner was not competent to represent himself. R. at 10-8:7. Subsequently during trial, Petitioner again requested a hybrid representation model where he would ask "certain questions, which I think is the best thing for me to question certain witnesses . . . And where we're asking the detectives, I'd like to— Mr. Stafford to do it, to represent me on those issues." R. at 10-8:89–90. The trial court confirmed he was requesting "hybrid representation once again" and pointed out to Petitioner "you just keep rearguing and rearguing it again and again." R. at 10-8:93, 101. The trial judge ultimately stated, "I have made a warning to you concerning the dangers and disadvantages of self-representation, which you do not appear to understand. . . . I'm satisfied

4

that you're unable to make a competent, intelligent and voluntary waiver of your right to counsel in this case. . . . That request [for hybrid representation] is denied." R. at 10-8:102.

On October 9, 2012, the trial court admonished Petitioner on the record for refusing to come to court. R. at 10-8:709. The following day, Petitioner indicated through his counsel he was "feeling these uncontrollable urges and doesn't trust himself in the courtroom." R. at 10-8:834. Petitioner then stated he wanted to represent himself: "I feel like the right to counsel is being shoved down my throat. I don't want it. I don't want the right to counsel. It's supposed to be an option." R. at 10-8:837. The trial court again made the finding "[y]ou will not represent yourself because, as I've indicated before on several occasions, you're not competent to do so." R. at 10-8:843.

When Petitioner again refused to come into the courtroom, on October 10, 2012, a court officer testified on the record and repeated statements made to him by Petitioner. R. at 10-8:884–88. According to the officer, Petitioner said he needed mental health counseling and "if I go in there I'm going to break or — break Mr. Stafford's jaw, punch him in the mouth. I don't want him as my attorney anymore." R. at 10-8:888. In response to the officer's questions, Petitioner went on to say he wanted to represent himself with trial counsel's assistance, "he can be my advisor." R. at 10-8:888. After further examinations of the officer and discussion with counsel, the trial court concluded Petitioner was engaging in the behaviors as a "gambit" to delay the trial as he had demonstrated his competence to aid in his own defense and, moreover, had told the officer if his request to represent himself was granted he would not need mental health counseling. R. at 10-8:894–96. The trial court then ordered Petitioner excluded from the court for the remainder of the trial, in the interests of the safety of his counsel and the rest of the court. R. at 10-8:895–96. Petitioner subsequently began to bang on the wall adjoining his holding cell

5

with the courtroom, scream loud enough to be heard in the courtroom and also urinate all over the cell and cell doors. R. at 10-8:922–23. The trial court then ordered him returned to custody of the county sheriff. R. at 10-8:927.

Two days later during the trial, Petitioner stated, according to court officers, he was going to get someone to shoot Mr. Stafford in the head as well as Mr. Stafford's wife, family, and children. R. at 10-9:3. The following week, Petitioner sent a letter to the trial court again threatening to shoot Mr. Stafford and his family. R. at 10-9:248. After consulting with trial counsel and the prosecutor, "[t]he Court feels that this is a rather obvious attempt by Mr. Neree to provoke a mistrial at this juncture by continued threats to counsel. If we were to accept such behavior and allow a mistrial under these circumstances, then Mr. Neree could prevent his case from being heard ad infinitum because we would reward then any attempt to threaten one's attorney." R. at 10-9:249. At the conclusion of the prosecution's case, the court spoke with Petitioner on the record and found "based upon your demeanor, your ability to communicate with this Court and control your actions that your actions are willful and are not — and are not so impulsive that they reflect your inability to follow the Court's instructions. Instead, it's a willful act on your part." R. at 10-9:310.

On March 6, 2013, after the jury trial, Petitioner was convicted of Robbery in the Third Degree and Grand Larceny in the Second Degree. Opp'n Mem. at 18. He was acquitted of Attempted Robbery in the First Degree for the June 11, 2011 robbery. *Id.* On March 6, 2013, Petitioner was sentenced as a persistent felony offender to a period of incarceration of 25 years to life, for each of the charges, to run concurrently. *Id.* Petitioner's sentence was the maximum allowed by law. N.Y. Penal Law § 70.10.

## III.    Post-Conviction Activity

Petitioner appealed his judgment of conviction to the Appellate Division, Second Department ("Second Department") on June 19, 2014. R. at 10:1. In his appeal, Petitioner argued: (1) the trial court improperly denied his application to proceed *pro se*; (2) he was improperly sentenced as a persistent felony offender and the sentence was harsh and excessive; (3) the trial court committed reversible error in not responding to a jury note; and (4) Petitioner's conviction was against the weight of the evidence. R. at 10:2–3, 6–57. The Second Department denied Petitioner's appeal on September 14, 2016. *People v. Neree*, 142 A.D.3d 1026 (N.Y. App. Div. 2d Dep't 2016).

The Second Department held "[b]ecause a defendant has no constitutional right to hybrid representation, the decision to allow such representation lies within the sound discretion of the trial court. Under the circumstances of this case, the County Court providently exercised its discretion in denying the defendant's request for hybrid representation." *Neree*, 142 A.D.3d at 1027 (quotations and citations omitted). Additionally, the Second Department held "[t]he County Court providently exercised its discretion in sentencing the defendant as a persistent felony offender. The court's conclusion that the nature of the defendant's criminal conduct, his history, and his character warranted extended incarceration was supported by the record. Further, the sentence imposed was not excessive." *Id.* (citations omitted). In rejecting Petitioner's claims of reversible error at trial, the Second Department found the evidence "was legally sufficient to establish the defendant's identity as the perpetrator of the crimes of grand larceny in the second degree and robbery in the third degree beyond a reasonable doubt," and his contention regarding the jury note "is without merit." *Id.* at 1026–27.

Petitioner then sought leave to appeal to the Court of Appeals and was denied on November 28, 2016. *People v. Neree*, 69 N.E.3d 1028 (N.Y. 2016).

On September 5, 2017, Petitioner filed the instant petition for *habeas* relief pursuant to 28 U.S.C. § 2254, raising four grounds for relief: (1) denial of his Constitutional right to represent himself at trial; (2) trial court failed to exercise its discretion in denying his request for hybrid representation; (3) use of unconstitutional lineups and identifications; and (4) illegal search and seizure of cell phones. Pet. at 7, 9, 22, 24, ECF No 2, 2-1, 2-2. The Suffolk County District Attorney responded in opposition on November 24, 2017. ECF No. 9-1. Petitioner filed a reply on April 20, 2018. ECF No. 16.

## DISCUSSION

The Court's review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. A federal *habeas* court may only consider whether a person is in custody pursuant to a state court judgment "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA requires federal courts to apply a "highly deferential standard" when conducting *habeas corpus* review of state court decisions and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). A writ of *habeas corpus* shall only be granted if the State court's adjudication on the merits, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Because the Court of Appeals, Second Department, and the trial court adjudicated Petitioner's claims and properly considered the federal jurisprudence, the Court's review is

8

extremely deferential to the state court's determination inquiring "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 365 (2000); *Kruelski v. Conn. Super. Ct. for Jud. Dist. of Danbury*, 316 F.3d 103, 105 (2d Cir. 2003) ("Comity, as recognized in the AEDPA, mandates that lower federal courts yield to many state court interpretations of federal law even when such interpretations are wrong, so long as they are reasonable."). With these legal principles in mind, the Court now turns to the analysis of Petitioner's request for *habeas* relief.

**I.  Petitioner Was Not Denied His Right to Proceed *Pro Se* at Trial**

Petitioner's first ground for relief, denial of his Constitutional right to proceed *pro se* at trial fails as the trial court determined Petitioner was not competent to waive his right to counsel and was not mentally competent to conduct his own defense. A criminal defendant has a Constitutional right to go to trial without the benefit of an attorney. *Faretta v. California*, 422 U.S. 806, 821 (1975) ("The Sixth Amendment, when naturally read, thus implies a right of self-representation."). When a criminal defendant gives "a knowing, voluntary and unequivocal waiver of one's right to counsel," the trial court must let them proceed on a *pro se* basis, regardless of their education, training, or legal acumen. *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir. 1994); *see also Faretta*, 422 U.S. at 835 ("For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits."). However, "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so," and may in such cases insist on representation by counsel. *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008).

9

During the pre-trial hearing, the trial court appropriately granted Petitioner's request to proceed *pro se*. R. at 10-2:159 ("[T]he Court is satisfied that if [Petitioner] wishes, he's made a competent, intelligent and voluntary waiver of his right to counsel in the case."). Petitioner now argues his Constitutional right was "violated when the court had rescinded Petitioner's right to represent himself pro se on the grounds that the court felt that Petitioner was not versed in the law to represent himself pro se." Pet'r's Reply at 5, ECF No. 16 ("Pet. Reply").

To the contrary, the trial court found Petitioner lacked the competence to waive his right to counsel. R. at 10-3:14–15 ("I no longer feel that based upon statements you placed on the record today that you are able to, first, make the competent decision to proceed in the absence of counsel."). A district court is not obliged to accept every defendant's invocation of the right to self-representation. *United States v. Purnett*, 910 F.2d 51, 55 (2d Cir. 1990). "[A] defendant's waiver of counsel is valid only when it can be shown from the record that the waiver was made knowingly and intelligently." *Id.* at 54–55. The trial court found Petitioner was not able to make a "a knowing, voluntary and unequivocal waiver of [his] right to counsel." *Bartlett*, 44 F.3d 95 at 99; R. at 10-8:102 ("I'm satisfied that you're unable to make a competent, intelligent and voluntary waiver of your right to counsel in this case."). In the absence of such a waiver, the trial court was obliged to re-appoint counsel for Petitioner. *Purnett*, 910 F.2d at 55 ("The rule has been aptly stated: 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights.") (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *cf.* R. at 10-8:4 (Petitioner saying "I'm not waiving my right to counsel.").

Moreover, the trial court also found Petitioner was not mentally competent to conduct his own defense. R. at 10-8:843. The Constitution permits a trial court to deny defendants' requests for self-representation when they are competent to stand trial but "still suffer from severe mental

illness to the point where they are not competent to conduct trial proceedings by themselves."
*Edwards*, 554 U.S. at 178. "[A] right of self-representation at trial will not 'affirm the dignity'
of a defendant who lacks the mental capacity to conduct his defense without the assistance of
counsel. To the contrary, given that defendant's uncertain mental state, the spectacle that could
well result from his self-representation at trial is at least as likely to prove humiliating as
ennobling." *Id.* at 176 (internal quotation omitted). "Even at the trial level, [ ] the government's
interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's
interest in acting as his own lawyer." *Martinez v. Ct. of App. of Cal.*, 528 U.S. 152, 162 (2000).

The record here demonstrates the trial court's concerns to be well-founded. In addition to
threatening physical violence against his counsel and his counsel's family, R. at 10-9:3,
Petitioner also engaged in disruptive behavior such as urinating around his cell, banging on the
wall of the courtroom, and screaming. R. at 10-8:922–23. Petitioner argues "the record clearly
demonstrate[s] that every instance of alleged misbehavior . . . can be traced directly to and [i]s a
provoked reaction[] to the trial court's ruling to rescind, deny, and violate Petitioner's
fundamental right to represent himself pro se." Pet. Reply. at 10. However, Petitioner's reaction
to this adverse ruling raises the question of how Petitioner, had he been allowed to proceed *pro
se*, would have reacted to the inevitable adverse rulings he would have received at trial.

"[S]tate court factual determinations are entitled to a presumption of correctness if they
are 'fairly supported by the record,'" and the trial court's finding of Petitioner's lack of capacity
to conduct his own defense is supported by the record of Petitioner's erratic behavior. *Bartlett*,
44 F.3d at 99. Though the trial court was not required under *Edwards* to deny Petitioner's
requests to represent himself, the choice to do so did not violate Petitioner's Constitutional
rights. *Edwards*, 554 U.S. at 178; *cf. United States v. Siddiqui*, 699 F.3d 690, 705 (2d Cir. 2012),

11

*as amended* (Nov. 15, 2012) ("*Edwards* holds that a court may require that trial counsel appear on behalf of a mentally ill defendant, not that it must do so.").

The trial court properly found Petitioner lacked capacity to make a knowing, voluntary, and intelligent waiver of his right to counsel and properly found he lacked the mental capacity to represent himself. Therefore, Petitioner's claims for *habeas* relief on this ground must be denied.

## II. The Trial Court Properly Exercised Its Discretion in Denying Petitioner's Request for Hybrid Representation

Petitioner also seeks *habeas* relief on the ground the trial court "failed to acknowledge and exercise its supervisory judicial discretion when it failed to make an independent decision regarding my request for hybrid representation." Pet. at 9. Throughout the pre-trial hearings and trial, Petitioner consistently requested he be allowed to conduct portions of his own defense, such as questioning specific witnesses, while still retaining his attorney as "co-counsel." R. at 10-2:154–55, 10-2:162, 10-8:6, 10-8:89–90. The trial court declined to exercise its discretion to allow such hybrid representation. *Id.*

"[A] criminal defendant has no constitutional or statutory right to represent himself as co-counsel with his own attorney." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989); *People v. Rodriguez*, 741 N.E.2d 882, 884 (N.Y. 2000) ("A criminal defendant has no Federal or State constitutional right to hybrid representation."). "The right to self-representation and the assistance of counsel are separate rights depicted on the opposite sides of the same Sixth Amendment coin. To choose one obviously means to forego the other." *Purnett*, 910 F.2d at 54. As such, Petitioner's second ground is not cognizable in a *habeas* proceeding as his request for hybrid representation does not raise a "violation of the Constitution or laws or treaties of the

12

United States." 28 U.S.C. § 2254(a). Even were Petitioner's claim cognizable in this proceeding, it would be denied on the merits.

"The decision to grant or deny 'hybrid representation' lies solely within the discretion of the trial court." *Tutino*, 883 F.2d at 1141. Despite Petitioner's arguments, the record reflects the trial court properly exercised its discretion in denying Petitioner's requests for hybrid representation. The trial court correctly held the decision was in the "sound discretion of the court." R. at 10-8:7; *see also* R. at 10-2:162–63 ("I am aware of case law that states, that although a trial court may appoint standby counsel to assist a pro se defendant, a defendant has no right to a hybrid form of representation in either the Federal or the State Court System."). In denying Petitioner's repeated requests, the trial court expressly considered a number of factors including harm to Petitioner, harm to the prosecution, harm to defense counsel, and administrative difficulties of conducting a trial under those circumstances. R. at 10-2:165-69. The trial court's decision to place heavy weight on its finding Petitioner was not competent to represent himself was a provident and sensible consideration of the factors. R. at 10-8:7–9. Indeed, on review of the record the trial court's thorough discussion of the issues raised and patience with all involved is evident. Petitioner's claims the trial court failed to exercise its discretion in denying his request for hybrid representation are meritless and must be denied.

**III.    Petitioner's Claims of Unconstitutional Lineups, Courtroom Identifications, and Search & Seizure are Procedurally Barred from Habeas Relief**

For a third ground for relief, Petitioner argues he was subjected to unconstitutional lineups as well as courtroom identifications. For his fourth ground, he argues his cell phones were subject to unconstitutional search and seizure. Both grounds fail and must be denied.

As an initial matter, Petitioner's claims are procedurally barred and must be dismissed. "Under 28 U.S.C. § 2254(b), applicants for habeas relief serving state sentences must first

exhaust all state remedies.  State remedies are deemed exhausted when a petitioner has: (i)

presented the federal constitutional claim asserted in the petition to the highest state court (after

preserving it as required by state law in lower courts) and (ii) informed that court (and lower

courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of

N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001).  Neither Petitioner's claim of unconstitutional

identifications nor his claim of illegal search and seizure of cell phones were raised in his state

court appeal.  By failing to "present the state courts with the same claim he urges upon the

federal courts," *Picard v. Connor*, 404 U.S. 270, 276 (1971), Petitioner has failed to exhaust his

claims and they must be dismissed.  A district court must "dismiss a petition for a writ of habeas

corpus containing any claims that have not been exhausted in the state courts," allowing the

petitioner to return to state court to exhaust his claims.  *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

Further, Petitioner has now procedurally defaulted on his arguments of unconstitutional

identification and search and seizure of his cell phones.  Were he now to raise them in New York

State court, they would be denied under N.Y. Crim. Proc. Law § 440.10[2][c] as he failed to

raise them in his direct appeal.  Federal *habeas* review is thus barred for Petitioner's default

unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner fails to demonstrate cause for his default.  He argues ineffective assistance of

trial and appellate counsel as his reason for his failure to exhaust.  Pet. at 23–24.  However,

Petitioner has not raised the issue of ineffective assistance of appellate counsel in any state court

motion, such as an application for *coram nobis*. *People v. Rosario*, 46 N.E.3d 1043, 1045 (N.Y.

2015) (*Coram nobis* application is "extraordinary relief only to be provided in rare cases when a

14

right to appeal was extinguished due solely to the unconstitutionally deficient performance of counsel.") (internal quotations and alterations omitted). "Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Plaintiffs claims must therefore be dismissed as procedurally barred.

However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Accordingly, the Court now turns the merits of Petitioner's claims.

## A. Petitioner's Lineup and Photo Array Were Not Suggestive

Petitioner's claims his Constitutional rights were violated during the identifications fail on their merits. While the "Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification," *Kirby v. Illinois*, 406 U.S. 682, 691 (1972), neither the photo array nor the pre-trial lineup used to identify Petitioner were suggestive in the slightest. R. at 10-1:5–17. At the lineup, each participant sat in front of a police officer, wore the same hat, and had a plastic sheet covering them below their face. *Id.* Participants in both the lineup and photo array matched Petitioner demographically, with just a slight variation in age. *Id.* Additionally, despite Petitioner's arguments, the right to counsel does not attach at a pre-indictment lineup. *Kirby*, 406 U.S. at 688 ("[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."). As Petitioner was not entitled to counsel during the lineup and as neither the photo array nor lineup were suggestive, Petitioner's third ground for relief is "plainly meritless."

15

*Rhines*, 544 U.S. at 277. Moreover, there is no basis in the record to conclude the courtroom identifications of Petitioner at trial were in any way suggestive.

### B. Federal *Habeas* Relief is Not Available for Petitioner's Claims of Unconstitutional Search and Seizure of His Cell Phones

Similarly, Petitioner's argument his cell phones were unconstitutionally seized fails on its merits, as he was afforded the appropriate State proceedings. Arguments under the Fourth Amendment are available in *habeas* proceedings only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Petitioner was afforded the "corrective procedure" provided by New York State Criminal Procedure Law when the trial court held extensive hearings before ruling on the admissibility of the photo array, lineups, and seizure of Petitioner's cell phones. R. at 10-1:1–4. As detailed above, Petitioner was afforded a thorough corrective procedure regarding his claims of unconstitutional search and seizure and "a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72. *Habeas* relief is thus unavailable for Petitioner and his fourth grounds, unconstitutional search and seizure of his cell phones, must be denied as "plainly meritless." *Rhines*, 544 U.S. at 277.

**CONCLUSION**

Petitioner's petition for a writ of *habeas corpus* is DENIED in its entirety.  A certificate

of appealability shall not issue.  *See* 28 U.S.C. § 2253.  The Clerk of the Court is directed to

serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED**

s/ WFK

Dated: May 1, 2020
       Brooklyn, New York

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE